**Carson LUTZ, Appellant–Defendant,**

v.

**ERIE INSURANCE EXCHANGE, As Subrogee of Paul McCormick, Appellee–Plaintiff.**

**No. 49A02–0503–CV–180.**

Court of Appeals of Indiana.

Dec. 14, 2005.

 ☞3526(10)

Stephen Gerald Gray, Indianapolis, for Appellant.

Robert A. Smith, Michael P. Hughs, Stephen A. Semotuk, Smith & Wade, Carmel, for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Carson Lutz appeals the trial court's denial of his motion for a directed verdict with respect to appellee-plaintiff Erie Insurance Exchange's (Erie) subrogation action against him for property damage that resulted to one of its insured's vehicles following an automobile accident. Lutz further maintains that the trial court erred in denying his request that it take judicial notice of the color of the traffic signal at an intersection just before the accident occurred. Finding no reversible error in these circumstances, we affirm the judgment of the trial court.

## FACTS

On April 28, 2001, Kathryn McCormick was traveling eastbound in a funeral procession on Washington Street in Indianapolis. A uniformed police officer—Corporal Christopher Morgan—was on his motorcycle with its emergency lights activated directing traffic on Post Road as the funeral procession continued eastbound on Washington Street through that intersection. McCormick was driving with her headlights on and a flag had been placed on her vehicle that identified her as a part of the procession.

Lutz was traveling southbound on Post Road at the same time. McCormick stated that because of Corporal Morgan's location in the middle of the intersection and because she was farther back in the procession, she did not look northbound towards Post Road as she drove through the intersection. Also, Lutz did not see Corporal Morgan directing traffic prior to entering the intersection. Lutz ultimately collided with McCormick's vehicle. McCormick testified that she had no time to brake, and she did not hear any tires skidding before the impact.

At the time of the accident, McCormick was insured through Erie. As a result of the incident, Erie paid $5,533.42 to repair McCormick's vehicle pursuant to the insurance policy. In exchange for payment, McCormick assigned her rights of recovery against Lutz to Erie. Thus, on January 22, 2002, Erie filed a complaint against Lutz pursuant to its subrogation rights for Lutz's alleged negligence that caused the damage to McCormick's vehicle. While Erie alleged that it was obligated to pay the damages to McCormick's vehicle under the policy, it did not attach a copy of that contract to the complaint.

Lutz counterclaimed, alleging that McCormick was negligent because she had entered the intersection against the red light and caused the collision. He further alleged that McCormick was negligent by failing to keep a proper lookout and in entering an intersection by disregarding an automatic signal. Hence, Lutz claimed that McCormick caused the accident. In her Answer, McCormick admitted to entering the intersection against the red light as part of the funeral procession as Officer Morgan had directed.

On February 15, 2002, Lutz filed a motion to dismiss the complaint because Erie had failed to attach a copy of the insurance contract to the complaint. Lutz contended that Erie was obligated to include the policy in accordance with Indiana Trial Rule 9.2 because its purported subrogation rights were based on the written insurance policy. While Erie responded that it was not required to provide the contract with

the complaint, and it never amended its complaint to include a copy of the contract, the trial court did not rule on Lutz's motion to dismiss.

At a jury trial that commenced on February 8, 2005, Laura Stroke, a witness to the accident, testified that she was traveling southbound on Post Road approaching the intersection from the north. When Stroke reached Washington Street, she realized that a funeral procession was traveling through the intersection because there was a slow moving line of traffic with flags on the vehicles. She also observed the officer in the intersection directing traffic. Stroke then stopped her vehicle even though the light was green, and she testified that Lutz was in the vehicle behind her and tailgating her. At some point, Lutz veered around to the right and accelerated as he approached the intersection.

Lutz testified that he did not recall tailgating Stroke. He also maintained that his foot was not on the accelerator when he entered the intersection, but he was uncertain whether his foot made it to the brake pedal before the impact. There was also testimony that after Lutz passed Stroke, there were no vehicles obstructing his view of the intersection.

Officer Morgan testified that the light was green for McCormick when she entered the intersection. However, during the trial, McCormick testified that she did not recall the color of the light because she was focused on the vehicle in front of her that was also part of the funeral procession.

In the end, the jury found McCormick 10% at fault, Lutz 80% at fault, and a nonparty 10 % at fault. A verdict in the amount of $3,626.74 was awarded in favor of Erie and against Lutz. Lutz now appeals.

## DISCUSSION AND DECISION

### I. Proof of Insurance Policy

■ Lutz first argues that the trial court erred in not entering a directed verdict in his favor. Specifically, Lutz maintains that he was entitled to a directed verdict because Erie "wholly failed to prove the existence of any insurance contract and that any contract of insurance was in force at the time of the accident." Appellant's Br. p. 1.

In resolving this issue, we first note the provisions of Indiana Trial Rule 9.2(A):

**(A) When instrument or copy must be filed.**

When any pleading allowed by these rules is founded on a written instrument, the original, or a copy thereof, must be included in or filed with the pleading. Such instrument, whether copied in the pleadings or not, shall be taken as part of the record.

Notwithstanding the requirements set forth above, we note that this case was founded on Lutz's negligence that resulted in property damage to McCormick's vehicle. Erie's action was not premised on the existence of an insurance contract. Rather, Erie's complaint was pled under the tort theory of negligence, the parties tried the case under that theory, and the jury was instructed under the theory of negligence. Moreover, Lutz was not a party to the contract between it and McCormick. As a result, Trial Rule 9.2(A) does not apply to the circumstances here, and it was not necessary for Erie to have introduced the insurance policy into evidence.

■ Even so—and contrary to Lutz's claim—ample evidence was presented at trial establishing the existence of a contract between Erie and McCormick. For instance, McCormick testified on direct examination that Erie paid for the necessary repairs to her vehicle. Appellee's App. p.

41. McCormick recalled contracting with an insurance agent to purchase insurance through Erie, and her policy had been in force on April 28, 2001. *Id.* at 58. McCormick also testified that she understood that Erie was seeking compensation from Lutz for money that it had paid to repair her vehicle, and that she was transferring her rights of recovery against Lutz to Erie. *Id.* at 58–60.

Also, Phillip Williams—an Erie claims adjustor in Indianapolis—testified that he was the adjustor assigned to McCormick's claim. *Id.* at 47, 49. Williams identified an estimate from the Ray Skillman Ford automobile dealership (Ray Skillman) as a copy of the original estimate on McCormick's vehicle for the repairs that were performed. *Id.* at 48, 79–86. Williams approved the repairs and authorized the payment from Erie to Ray Skillman to repair the vehicle. *Id.* at 50, 52–53.

In light of the above, the evidence at trial showed that an insurance contract existed between Erie and McCormick. Evidence was also presented demonstrating that Erie paid for the damages to McCormick's vehicle and that McCormick had assigned her rights of recovery to Erie. For all of these reasons, Lutz may not succeed on his claim that the trial court should have entered judgment in his favor because Erie failed to show the existence of an insurance policy between it and McCormick.

■ In a related argument, Lutz maintains that the verdict must be set aside because there was no proof of Erie's right to subrogation, as the action was instituted in the name of Erie "as subrogee of Paul McCormick." Appellant's Br. p. 8. To this end, Lutz alleges that the verdict may not stand because the record was silent as to the identity of Paul McCormick and what rights, if any, he could assert as a result of the incident. Appellant's Br. p. 5.

Therefore, Lutz asserts that whether Paul McCormick "had any right to recover against [Lutz] is pure speculation." *Id.*

Here, Erie filed its action as the subrogee of its insured, the insured—McCormick—testified in court, and Erie notified McCormick of its intent to recover compensation from Lutz for the money paid to repair McCormick's vehicle. Moreover, Lutz never addressed any concerns that it may have had with respect to Paul McCormick's identity or his right to recover under the policy at the trial court level. Lutz also did not submit these issues to the jury despite having the opportunity on cross-examination or on direct examination to question McCormick or Williams regarding Paul's status to assert any rights that he may have had under the policy. Therefore, the issue is waived. *See Dedelow v. Pucalik,* 801 N.E.2d 178, 183 (Ind. Ct.App.2003) (holding that a party generally waives appellate review of an issue or argument unless that party presented that issue or argument before the trial court).

■ Waiver notwithstanding, Indiana Code section 34–53–1–3 provides that "this chapter does not prohibit an insurer with a subrogated property damage claim from settling the insurer's subrogation claim separately by arbitration, agreement or suit *in the insurer's own name.*" (Emphasis added). Hence, under this statute, Erie had the right to pursue recovery against Lutz in its own name regardless of who may have been the subrogor under the insurance policy in this instance. As a result, Lutz's claim fails on this basis as well, and we conclude that the trial court did not err in denying Lutz's motion for a directed verdict.

## II. *Refusal to Take Judicial Notice*

■ Lutz next complains that the judgment for Erie must be set aside because

the trial court refused to take judicial notice of a statement that she made in her Answer. Specifically, Lutz argues that the trial court was obligated to take judicial notice of her statement that the "Third Party Defendant admits *she entered the intersection against the red light* as part of a funeral procession and as directed by the uniformed police officer pursuant to I.C. § 9–21–13–1." [1] Appellant's App. p. 9 (emphasis added).

In resolving this issue, Lutz points to the following provisions of Indiana Evidence Rule 201:

> (d) A court shall take judicial notice if requested by a party and supplied with the necessary information.

> . . .

> (g) In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed.

Notwithstanding the above, Lutz neglects to point out that section (a) of the rule defines a judicially noticed fact as one "not subject to reasonable dispute" that is either "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." As this court observed in *Brown v. Jones*, "a trial judge may take judicial notice of the pleadings and filings in the very case that is being tried. . . . Even so, facts recited within the pleadings and filings that are not capable of ready and accurate determination are not suitable for judicial notice." 804 N.E.2d 1197, 1202 (Ind.Ct.App.2004),

*trans. denied.* The *Brown* court went on to observe that the impossibility of a reasonable dispute marks such facts and justifies their acceptance as true without proof. *Id.*

In this case, McCormick testified at trial that she could not recall the color of the light when she entered the intersection because she was focused on the vehicle in front of her. Appellee's App. p. 42. By the same token, while McCormick stated in her Answer that she entered the intersection against the red light, she did not deny that her attorney filed the Answer on her behalf. *Id.* The statements contained in McCormick's Answer were not subject to judicial notice, as the facts regarding the color of the light were disputable as a result of the evidence adduced at trial. *See Brown*, 804 N.E.2d at 1202. To be sure, Corporal Morgan testified at trial that McCormick had the green light when she traveled through the intersection. Appellee's App. p. 77–78. McCormick testified that she did not recall the color of the light because she was focused on the vehicle in front of her. *Id.* at 42. Hence, these facts were properly left for the jury to decide and were not the subject of judicial notice.

The jury in this case heard evidence of McCormick's admission in the Answer, heard McCormick testify that she could not recall the color of the light during trial, and heard Corporal Morgan testify that the light was green for McCormick when she proceeded through the intersection.

---

1. This statute provides as follows:

 (a) A vehicle with lighted headlights in a funeral procession has the right-of-way at an intersection and may proceed through the intersection if the procession is headed by a lead or funeral escort vehicle displaying alternately flashing red and blue lights, except if either of the following conditions exist:

 (1) When the right-of-way is required by an authorized emergency vehicle giving an audible signal.
 (2) When the vehicles in procession are directed otherwise by a police officer.
 (b) Before assuming the right-of-way, a person who drives a vehicle in the funeral procession must exercise due caution with regard to crossing traffic.

Hence, the jury had the opportunity to weigh the evidence and judge the credibility of the witnesses. *Id.* at 42, 77–78. Thus, it was not proper for the trial court to take judicial notice of the facts contained in the Answer regarding the color of the light, inasmuch as they were facts subject to reasonable dispute. Therefore, Lutz's argument fails.

The judgment of the trial court is affirmed.

NAJAM, J., and BAILEY, J., concur.